# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3872 | **DATE** | 9/25/2002 |
| **CASE TITLE** | Haywood vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendants' motion to dismiss the second amended complaint (73-1). Haywood is ordered to show cause in writing, by 10/9/02, why judgment on the pleadings should not be entered against him on all claims other than Count 3. If the Court believes that a reply by the defendants is necessary, it will advise the parties. In the event that the Court determines, following review of these submissions, that judgment should be entered on those claims, the case will remain set for trial on 1/6/03 on Count 3. Pretrial order is due 11/26/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 3 0 2002 | 32 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | CV | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| OR | courtroom deputy's initials | 02 SEP 29 PM 6:15 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID HAYWOOD, )
)
Plaintiff, )
)
vs. ) Case No. 01 C 3872
)
CITY OF CHICAGO, OFFICER )
MICHAEL MAROZAS, Star No. 11354, and )
OFFICER EDWARD MARAS, Star No. 4586, )
)
Defendants. )

DOCKETED SEP 3 0 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

It is an elemental principle of our system of justice that false testimony cannot be tolerated. "All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth." *In re Michael*, 326 U.S. 224, 227 (1945). Today this Court reaffirms this principle in holding that a police officer's knowing submission of material false statements in a sworn criminal complaint, submitted to a court to justify extended detention of an arrestee, constitutes a violation of an arrestee's Fourth Amendment rights for which the officer is not entitled as a matter of law to qualified immunity. This holding is likely to be of little benefit, however, to the plaintiff in this case, for reasons that will become clear.

### Plaintiff's complaint

Because defendants have moved to dismiss plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept as true the facts alleged in that complaint and ask whether "it is clear that no relief could be granted under any set of facts that

32

could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 72 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

On November 7, 2000, plaintiff David Haywood, a security guard, left his home to drive to work. 2d Am. Cplt. ¶4. He was stopped by Chicago police officers Michael Marozas and David Maras shortly after leaving his apartment. *Id.* ¶5. Haywood alleges in general terms that he had violated no laws and that the officers lacked probable cause or reasonable suspicion to stop him. *Id.* The officers searched Haywood and took his firearm, which he was carrying in a holster at his waist. *Id.* ¶¶6, 8. Haywood tried to explain that he was a security guard and was simply driving to work, and he asked why he had been stopped. The officers declined to answer, handcuffed Haywood, and took him to a police station, where he was held. *Id.* ¶9. Haywood says that at the time of the arrest he was in possession of an Illinois Firearm Owners Identification card, a fact that he says was noted in the officers' written report. *Id.* ¶¶11, 13. He concedes that he was not carrying his so-called "tan card" which would confirm that as a licensed security guard he was authorized to carry a firearm. *Id.* ¶12. But, he says, the officers did not know this; according to Haywood, they did not ask whether he had a tan card, made no investigation on their own, and did not learn until discovery in this case that he had no tan card. *Id.* ¶13.

The next day, after being held overnight in jail, Haywood learned that he had been charged with the offense of aggravated unlawful use of a weapon. The statute defining that offense, 720 ILCS 5/24-1.6, provides that a person who carries a firearm in the presence of certain aggravating factors – such as that the firearm is uncased, loaded, and accessible – commits a Class 4 felony. Another statute provides that the prohibitions against carrying

2

firearms do not apply to licensed security guards whose duties include the carrying of a weapon, "while actually engaged in the performance of the duties of their employment or commuting between their homes and places of employment, provided that such commuting is accomplished within one hour from departure from home or place of employment." 720 ILCS 5/24-2(a)(5). To claim this exemption, the security guard must complete an approved course in firearms handling and training and must carry documentation – the aforementioned "tan card" – demonstrating completion of the course. *Id.* As noted above, Haywood concedes that he was not lawfully carrying his firearm in that he did not have a tan card, 2d Am. Cplt. ¶12, though he contends that the officers were not aware of this at the time.

The day after his arrest, Haywood was taken to a branch of the Circuit Court of Cook County for an initial appearance and *Gerstein* hearing. *See Gerstein v. Pugh,* 420 U.S. 103 (1975). At the hearing, the court was presented with a criminal complaint, handwritten on a preprinted form, which stated as follows:

> P.O. Marozas 11364 complainant, now appears before the Circuit Court of Cook County and states that David L. Haywood, 8169 S. Ingleside Chicago, Illinois has, on or about 7 Nov. 00 at 8100 S. Drexel Chicago, Cook County Illinois committed the offense of aggravated unlawful use of a weapon in that he knowingly and unlawfully carried on his person a loaded handgun in a vehicle and concealed on his person while not at his place of business, his abode, or on his land in violation of 720 ILCS 5/24-1.6.

In the space for "Complainant's Signature," the signature "P.O. Marozas" appeared in script; the same name was printed below the signature. Immediately below the signature line was a jurat, which stated that Marozas, "being first duly sworn on oath, deposes and says that he/she read the foregoing complaint by him/her subscribed and that the same is true." This was again signed "P.O. Marozas" in script. The jurat had a line on which the oath and signature was to be attested

3

by a "judge or clerk"; this was signed, in script, "Aurelia Pucinski by P.O. Burnby #83." (At the time, Aurelia Pucinski was the Clerk of the Circuit Court of Cook County.) The bottom of the form contained a preprinted statement to be signed by the judge presiding at the *Gerstein* hearing, stating that "I have examined the above complaint and the person presenting the same and have heard evidence thereon, and am satisfied that there is probable cause for filing same. Leave is given to file said complaint." This statement is not signed on the copy of the complaint that was provided to the Court in connection with earlier discovery disputes.

But in fact Officer Marozas neither filled out nor signed the complaint, and Officer Burnby did not attest Marozas's signature. Rather, Officer Marozas's partner, Officer Edward Maras, filled out the form and signed Marozas's name in both places – the space for "complainant's signature" and the signature line in which the complainant "being first duly sworn, on oath deposes and says . . . that [the complaint] is true." Maras also signed Officer Burnby's name (and, we assume, Aurelia Pucinski's name) on the line stating that Marozas had "[s]ubscribed and sworn to" the complaint before him. As the Court understands it, there is no dispute about these facts; Maras conceded all of them at his deposition. Haywood thus alleges that the complaint contained knowingly false statements made by the officers – or at least by Officer Maras. And according to Haywood, there is a policy, or at least a consistent and widespread practice, in the Chicago Police Department of officers signing one another's names on sworn criminal complaints and thus making similarly false statements.

Based on these allegations, Haywood claims, pursuant to 42 U.S.C. §1983, that he was unlawfully detained in violation of the Fourth Amendment; Count 1 asserts this claim against the City of Chicago on behalf of a putative class, and Count 4 makes the same claim against the

4

individual officers on behalf of Haywood individually. Haywood also asserts a state-law claim of false imprisonment, both against the City on behalf of a class (Count 2) and against the officers (Count 5). In Count 6, Haywood asserts a claim of malicious prosecution against the officers, and in Counts 7 and 8 he seeks to impose liability on the City for the state-law claims against the officers. Finally, in Count 3 Haywood makes a claim of unlawful search under §1983; that claim is not addressed in this Memorandum Opinion.

### Defendants' motion to dismiss

Defendants have moved to dismiss all of Haywood's claims except the unlawful search claim. They construe his claims as premised on the proposition that an arrestee may be detained beyond a *Gerstein* hearing only if there is a *sworn* complaint or affidavit supporting the detention; Haywood contends that the complaint was, for all practical purposes, unsworn. Defendants argue that the Fourth Amendment does not require this and that even if it does, they are entitled to qualified immunity.

The Fourth Amendment prohibits the issuance of a warrant without "probable cause supported by oath or affirmation." On its face, this provision does not speak to whether probable cause to support an arrest or detention without a warrant likewise must be supported by oath. In *Gerstein v. Pugh*, the Supreme Court held that the Fourth Amendment entitles a person arrested without a warrant to a prompt judicial determination of probable cause "as a prerequisite to extended restraint of liberty following arrest." *Gerstein*, 420 U.S. at 114. Because the judicial determination required in *Gerstein* arguably serves a purpose parallel to the Fourth Amendment's requirement that arrest warrants be issued by a neutral magistrate only upon a showing of probable cause supported by oath or affirmation, it might be logical to assume that the *Gerstein*

5

determination likewise must be based on oath or affirmation. But the Supreme Court did not impose such a requirement in *Gerstein*; its decision in that case did not prescribe any particular procedure for satisfying the Fourth Amendment's requirements. Though the "oath or affirmation" issue was not raised in *Gerstein*, the Court was called upon to address whether the initial determination of probable cause had to be made in an adversary setting with such safeguards as the right to counsel, confrontation of witnesses, cross-examination, and compulsory process. It declined to require this and noted that

> [t]here is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirements of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States. . . . Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.

*Id.* at 124-25 (footnotes omitted).

Illinois has elected to require that the detention of a criminal suspect be based on a complaint stated "on oath or affirmation" and sworn by the complainant. 725 ILCS 5/107-9(a) & (b)(4), 111-3(b). A violation of the state statute's requirements by itself is not a violation of the Fourth Amendment. *Gramenos v. Jewel Cos.*, 797 F.2d 432, 434-35 (7th Cir. 1986). But Haywood argues that the Fourth Amendment itself requires that detention beyond the relatively brief period permitted before a *Gerstein* determination be based on sworn statements or testimony. *See Carter v. Collins*, 95 F. Supp. 2d 851, 860 (N.D. Ill. 2000) (Moran, J.). The Court need not, however, definitively determine this issue for purposes of the present motion, for even were we to so hold, the defendant officers would be entitled to qualified immunity from

liability on Haywood's claim that they caused him to be held without a true "oath." Government officials performing discretionary acts are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Judge Moran's decision in *Carter*, though persuasive, is the only federal decision cited by Haywood that directly supports his "oath or affirmation" argument, and a single district court decision is insufficient to "clearly establish" a proposition of constitutional jurisprudence. *See Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987).

Municipalities, of course, are not entitled to claim qualified immunity, *see Owen v. City of Independence*, 445 U.S. 622, 638 (1980), and thus the City cannot take advantage of that particular defense. But to determine whether Haywood has stated a claim, the Court need not address the viability of his "oath or affirmation" theory, for he has articulated another theory that is sufficient to sustain the complaint against defendants' argument that it fails to state a claim and, at least for the time being, against the officers' defense of qualified immunity. We turn now to that theory.

Haywood argues that Officer Maras, who filled out and signed the complaint as "P.O. Marozas" and attested his own false signature by posing as "P.O. Burnby," made false statements that he knew would be used to justify Haywood's detention. The Fourth Amendment is violated when false statements are knowingly used to support an arrest; it follows that a violation likewise occurs when false statements are knowingly used as the basis for a detention beyond arrest. *Franks v. Delaware*, 438 U.S. 154 (1978), established that the constitutionality of a search based on a warrant may be attacked by a showing that the warrant was issued based on deliberately

7

false statements by law enforcement officers. The Court derived its conclusion

> from [the] language of the Warrant Clause [of the Fourth Amendment] itself, which surely takes the affiant's good faith as its premise: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ." Judge Frankel, in *United States v. Halsey*, 257 F. Sup. 1002, 1005 (S.D.N.Y. 1966), *aff'd*, Docket No. 31369 (CA2, June 12, 1967) (unreported), put the matter simply: "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful showing*" (emphasis in original). This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Id.* at 164-65. The Court's endorsement of the need for a *truthful* basis supporting probable cause extended beyond, and has been applied beyond, the search warrant context that was directly at issue in *Franks*. Over seventeen years ago, the Seventh Circuit stated, in a case concerning an arrest warrant claimed to have been based on knowingly false statements by a police officer, that "[i]t is clearly established that the fourth amendment requires a truthful factual showing sufficient to constitute probable cause." *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985). And finally, the Supreme Court itself has noted that under *Gerstein*, "a person arrested without a warrant is entitled to a fair and *reliable* determination of probable cause." *County of Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991) (emphasis added). A determination of probable cause to detain premised on deliberately false statements is the antithesis of a reliable determination. The Court therefore holds that the knowing submission of material false statements to a judicial officer to support detention under *Gerstein* violates the detainee's Fourth

Amendment rights.[1]

Haywood's complaint does not disclose exactly what took place at the *Gerstein* hearing. Haywood has, however, alleged that Maras knowingly made false statements in the complaint that he signed and caused to be presented to the judge who conducted the *Gerstein* hearing. Specifically, Haywood contends that Maras falsely represented himself as Marozas in swearing to the basis for the charge and falsely represented himself as Burnby in falsely attesting to Marozas's purported signature. On the current record, Haywood has adequately alleged that Maras's statement in the complaint that "P.O. Marozas . . . now appears before the Circuit Court of Cook County and states (etc.)" was false; that his statement that Marozas, "first duly sworn on oath, deposes and says that [he] read the foregoing complaint *by him subscribed*" was false; and that his statement that Officer Burnby was attesting to Marozas's signature was false.

As we have indicated, *Franks* and its progeny also require a showing of materiality of the false statements as a prerequisite to finding a Fourth Amendment violation. *Franks*, 438 U.S. at 155-56. A false statement is material if, in its absence, the affidavit (here, the complaint) would not have supported probable cause. *Id.* Defendants argue that an officer's signature of his partner's name to a criminal complaint cannot possibly be material. But we can dismiss a complaint for failure to state a claim only if it is clear that there is no set of facts consistent with the complaint that would support the granting of relief to the plaintiff. *Supra* at 1-2. The Court cannot make such a determination on the present record. It is certainly possible to posit circumstances in which an officer's false personation of his partner might make a difference to a

---

[1] A statement is considered knowingly false under *Franks* if it is deliberately false or made with reckless disregard for the truth. *Franks*, 438 U.S. at 171.

9

reasonable jurist. For example, the alleged offense may have taken place outside the view of the officer making the false signature. Though, as defendants point out, a finding of probable cause may be based on hearsay, *Gerstein,* 420 U.S. at 120, it is one thing for a judicial officer to rely on information that she knows is hearsay and thus can evaluate on its own terms; it is something else altogether for the complainant to conceal the hearsay nature of information by impersonating someone else. A slight change in the facts demonstrates the possible materiality of the alleged false statements. Suppose that Maras appeared personally at the *Gerstein* hearing, swore that he was Marozas, and stated exactly what is asserted in the written complaint against Haywood. In the Court's view, it could not credibly be maintained that no reasonable judge, upon learning of the deception, would consider it material. The Court perceives no significant difference between that scenario and what is, on the present record at least, alleged to have taken place here. Though defendants are free to argue that the allegedly false statements were immaterial – just as they are free to argue that they were not false at all (if, for example, Marozas and Burnby both knowingly authorized Maras to sign their names) – the Court cannot say that they were immaterial as a matter of law, as we would have to do before we could dismiss the complaint under Rule 12(b)(6).

For these reasons, the Court rules that Haywood's second amended complaint makes out a claim that the *Gerstein* determination was constitutionally flawed.

Though the individual defendants did not directly address the issue of qualified immunity with respect to Haywood's false statement theory, it is a fair inference from their immunity argument concerning the "oath or affirmation" theory that they would take the position that they are entitled to qualified immunity as a matter of law due to the absence of Supreme Court and

Circuit-level decisions squarely holding that a *Gerstein* submission based on false statements violates the detainee's rights. The Court disagrees with that claim. First of all, a showing that the law is clearly established for purposes of qualified immunity does not require a showing that "the very action in question has previously been held unlawful, but [rather] that in the light of pre-existing law the unlawfulness [is] apparent." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). In *Olson v. Tyler*, the Seventh Circuit held that an officer is not entitled to qualified immunity for submitting a knowingly false affidavit in support of the issuance of an arrest warrant, basing that holding largely on *Franks* itself, *see Olson*, 771 F.2d at 281-82, even though *Franks* involved a search warrant, not an arrest warrant. The same reasoning applies here: our holding regarding the illegality of a *Gerstein* showing based on false statements is premised on the same bedrock Fourth Amendment principles that led the Supreme Court to find it obvious in *Franks* that a warrant application must be based on truthful statements. Second, the Seventh Circuit has recently reaffirmed that "[q]ualified immunity is dissolved . . . when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Defendants do not claim – nor could they claim with a straight face – that a reasonable police officer would believe that lying in a sworn criminal complaint does not violate the constitutional rights of the detainee. For these reasons, the individual defendants are not entitled to a finding based on the complaint's allegations alone that they are entitled to qualified immunity.

Because the same arguments regarding the conduct of the *Gerstein* hearing form the basis for defendants' contention that all of the claims except the unlawful search claim (Count 3) should be dismissed for failure to state a claim, the Court's rulings require denial of that motion

11

in its entirety.

Despite this ruling, the Court's review of the complaint, the law of probable cause, and the pertinent Illinois statutes has exposed what we believe to be a fatal flaw in Haywood's claims other than the unlawful search claim: he appears to have effectively conceded the existence of probable cause. The law is clear that if probable cause existed at the appropriate time, Haywood's claims of false arrest, unlawful detention, and malicious prosecution, whether made under §1983 or state law, cannot stand. *Townes v. City of New York,* 176 F.3d 138, 149 (2d Cir. 1999); *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998); *Rankin v. Evans,* 133 F.3d 1425, 1436 (11th Cir. 1998); *Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir. 1996); *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir. 1996). Haywood admits that he was carrying a firearm on his person and that the arresting officers knew this at the time of the arrest. 2d Am. Cplt. ¶8. His claim of lack of probable cause to arrest or detain is premised on the proposition that the officers were unaware, and never inquired, whether he had a "tan card " authorizing him to carry a weapon, though he admits that in fact he did not have a tan card. *Id.* ¶12. It is hornbook law that the assessment of probable cause must be based on the information available to the officer at the time of the arrest, not information acquired later. *See, e.g., Smith v. Ball State University,* 295 F.3d 673, 769-70 (7th Cir. 2002). But review of the Illinois statute defining the offense for which Haywood was arrested reveals that his non-possession of a tan card was not necessary to the existence of probable cause. The offense of aggravated unlawful use of weapons under 720 ILCS 5/24-1.6(a)(3)(A) consists of the carrying of a loaded and immediately accessible weapon.[2]

---

[2] Though Haywood does not concede in the complaint that the gun he was carrying was loaded, carrying an unloaded weapon likewise constitutes an offense, namely unlawful use of
(continued...)

Non-possession of a tan card is not an element of the offense; rather, it is a defense on which the defendant has the burden of proof. 720 ILCS 5/24-2(h); *see People v. Smith,* 71 Ill. 2d 95, 105, 374 N.E.2d 472, 476 (1978). The prosecution need not include in a criminal charge allegations necessary to negate that defense, *see* §24-2(h), nor must it negate such a defense in order to obtain a conviction. *Smith,* 74 Ill. 2d at 105, 374 N.E.2d at 476. Rather, the defendant is required to introduce evidence in order to bring the defense into play and then must prove it by a preponderance of the evidence. *See People v. Norwick,* 261 Ill. App. 3d 257, 260, 634 N.E.2d 25, 28 (1994); 720 ILCS 5/24-2(h).

If an officer establishes the existence of probable cause on every element of a crime, he need not continue to investigate in order to test a suspect's claim of innocence. *Kelley,* 149 F.3d at 646. It follows that the officer is not required to investigate possible defenses of which he is unaware and that the suspect does not assert. Indeed, the Sixth Circuit recently held exactly that: the police are not required to seek out and investigate possible affirmative defenses before making an arrest. *Fridley v. Horrighs,* 291 F.3d 867, 874 (6th Cir. 2002). If the officers are made aware of information that tends to establish a defense, they cannot ignore it, *see id.* at 872-74, but that does not appear to have been the case here: Haywood does not claim to have shown the officers a "tan card" or even to have told them that he had one. In short, it appears to the Court that the concessions made in the Second Amended Complaint are fatal to all of Haywood's

---

²(...continued)
weapons in violation of 720 ILCS 5/24-1(a)(10). This offense, which would be based on the same set of facts that gave rise to the charge of aggravated unlawful use of weapons, is closely related to the one for which Haywood was arrested. Thus probable cause to arrest and detain for that offense would defeat Haywood's claims even in the absence of an admission. *E.g., Driebel v. City of Milwaukee,* 298 F.3d 622, 644 (7th Cir. 2002).

claims save Count 3, the claim in which he alleges that the police conducted an illegal search.

It would be inappropriate for the Court to dismiss Haywood's claims on this basis at this juncture, as he has not had the opportunity to address directly the point we have raised. The Court therefore directs Haywood to show cause why judgment on the pleadings should not be entered against him on all claims except Count 3 for the reasons just discussed.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss the second amended complaint [docket item 73-1]. Haywood is ordered to show cause in writing, by October 9, 2002, why judgment on the pleadings should not be entered against him on all claims other than Count 3. His memorandum is not to exceed ten pages in view of the narrow issue to be addressed. If the Court believes that a reply by the defendants is necessary, it will advise the parties following review of Haywood's memorandum. In the event that the Court determines, following review of these submissions, that judgment should be entered on those claims, the case will remain set for trial on January 6, 2003 on Count 3, and the final pretrial order will be due on November 26, 2002.

MATTHEW F. KENNELLY
United States District Judge

Date: September 25, 2002

14