Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3872 | **DATE** | 7/18/2003 |
| **CASE TITLE** | Haywood vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants' motion for summary judgment. Judgment is entered in favor of defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 22 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 58 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | 03 JUL 21 PM 2:42 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID HAYWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 01 C 3872 |
| | ) |
| CITY OF CHICAGO, OFFICER | ) |
| MAROZAS, and OFFICER MARAS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendants, the City of Chicago and Chicago Police Officers Michael Marozas and Edward Maras, have moved for summary judgment on the claims of plaintiff David Haywood. For the reasons stated below, the Court grants defendants' motion.

### Facts

Because defendants have moved for summary judgment, the Court views the facts in the light most favorable to Haywood, drawing reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Illinois law prohibits the carrying of a firearm outside of one's own land or fixed place of business; this is the crime of unlawful use of weapons ("UUW"), a misdemeanor unless the offender has a previous conviction for that offense. 720 ILCS 5/24-1(a)(4), (a)(10), & (b). A person commits the offense of aggravated unlawful use of weapons, a felony, by carrying a firearm that is loaded and immediately accessible; unloaded but with immediately accessible

ammunition; or without having a currently valid Illinois Firearm Owner's Identification Card (and in other circumstances not at issue in this case). 720 ILCS 5/24-1.6(a)(1) & (a)(3)(A)-(C). These prohibitions "do not apply to or affect" certain categories of persons, including the following:

> (5) Persons licensed as private security contractors ... if their duties include the carrying of a weapon under the provisions of the Private Detective, Private Alarm, and Private Security Act of 1983, while actually engaged in the performance of the duties of their employment or commuting between their homes and places of employment, provided that such commuting is accomplished within one hour from departure from home or place of employment, as the case may be. Persons exempted under this subdivision (a)(5) shall be required to have completed a course of study in firearms handling and training approved and supervised by the Department of Professional Regulation ... prior to becoming eligible for this exemption. The Department of Professional Regulation shall provide suitable documentation demonstrating the successful completion of the prescribed firearms training. Such documentation shall be carried at all times when such persons are in possession of a concealable weapon.

720 ILCS 5/24-2(a)(5). When the state charges a person with a violation of the unlawful use of weapons statutes, it need not negate in the charging document the exemptions contained in section 24-2, and "[t]he defendant shall have the burden of proving such an exemption." *Id.* 24-2(h).

As of November 7, 2000, David Haywood was living at 8154 South Ingleside in Chicago and working as an armed security guard for a company called Big Pawn. His work day officially started at 9:00 a.m., but according to Haywood his employer expected him to be there at 8:45 a.m., and it took him about an hour to drive to his workplace. That morning, like others, he holstered two weapons at his side and left for work at 7:39 a.m. After he had driven about a block, he was pulled over by Chicago police officers in a squad car. He had not violated any traffic laws prior to the stop.

That morning, officers Marozas and Maras were on routine patrol in their squad car; Maras was driving. They were stopped by an unnamed African-American man in his 40's who reported that an African-American man driving a black Thunderbird with tinted windows and armed with a gun was always in the area of 8100 South Ingleside. The citizen said he was afraid of the man and asked the officers to find him and check him out. Maras and Marozas patrolled the area and eventually spotted Haywood's car, a black 1996 Thunderbird with tinted windows, on 81st Street just off Ingleside. They activated the patrol car's flashing lights, and Haywood pulled over.

Maras and Marozas approached Haywood's car; at least one of them had his weapon drawn. According to Haywood, Maras ordered Haywood out of the car (Haywood claims Maras pulled him from the car), and the two of them proceeded to the rear of Haywood's car. Haywood's weapons were covered by his jacket.

Marozas began to search inside Haywood's car. Maras asked Haywood whether he was a police officer (Haywood said no) and where he was going. Haywood said he was going to Big Pawn, where he worked as security. Maras moved Haywood's jacket, saw one of the guns, and yelled, "Gun." He took the guns away from Haywood. Haywood repeated that he was just on his way to work, and in response to a question from one of the officers, he said he had to be there at 8:45 a.m.

Shortly after this (Haywood says this was after he had been handcuffed), Haywood again repeated that he was a security guard on his way to work, and he invited the officers to call Big Pawn to confirm this. He also told the officers that he had all the necessary paperwork in his car showing that he was authorized to carry a weapon; he invited the officers to go through it.

3

According to Haywood, one of the officers said that "we lock up security" and that they did not have to call Haywood's place of employment; the officers deny this.

Marozas got Haywood's papers from the car and reviewed them. The papers included a valid Illinois Firearm Owners Identification card and a valid Permanent Employee Registration Card, which the parties refer to as a "blue" card.[1] The papers also included a number of paycheck stubs from Big Pawn. Marozas asked Haywood for proof that his guns were registered with the City of Chicago. Haywood said he did not need to register his gun, and he directed the officers to a copy of a Chicago Police Department memorandum contained in his papers, dated May 1999, stating that based on a recent state court decision, persons licensed under the Private Detective, Private Alarm, and Private Security Act of 1993 were not required to register their duty firearms.

The officers did not ask Haywood whether he had a so-called "tan card," the document required by the UUW statute's exemption for security guards to authorize the carrying of a firearm. It is undisputed, however, that Haywood's papers did not include a valid and current tan card, for Haywood had no such card. But Haywood contends, and there is evidence to support his contention, that defendants did not realize at the time that this necessary document was missing from Haywood's papers. (Somewhat inconsistently, Haywood also contends that he had an expired tan card on his person and showed it to the officers before his arrest. This contention

---

[1] Although the parties have not advised the Court what a PERC card is, based on our review of the governing statute, it appears to evidence the holder's eligibility to be employed by a licensed security firm. But under the statute, it "does not in any way imply that the holder of the card is employed" by the firm, unless it is accompanied by an employee identification card, which licensed firms are required to furnish to employees. 225 ILCS 446/80(d), (g). It is not clear whether Haywood had such an identification card (as best we can tell, Haywood was employed directly by Big Pawn, not by a security firm).

4

is contradicted by other statements made by Haywood or through his counsel.)

At some point during this encounter, the officers placed Haywood under arrest. The officers' general offense case report says that Haywood was charged with aggravated UUW and states that the officers recovered Haywood's weapons "after [he] was unable to provide [the officers] with a City ... registration card. Offender then stated that he was going to take his mother to vote. Officer also states that he is not employed by a security company but that he works for a pawn shop." The officers' arrest report states that Haywood was arrested for violating the aggravated UUW statute, citing 720 ILCS 5/24-1.6.

Haywood was placed into the officers' squad car, taken to a police station, and booked. To check out Haywood's statement about his employment, Marozas telephoned Big Pawn and was told that Haywood was in fact scheduled to work that morning, starting at 9:00 a.m. At some point during his detention, the officers determined that Haywood's firearms were, in fact, registered; the arrest report confirms this.

At the police station, Maras filled out a criminal complaint charging Haywood with the offense of aggravated UUW in violation of 720 ILCS 5/24-1.6. The complaint alleged that Haywood had "knowingly and unlawfully carried on his person a loaded H&K .45 caliber pistol serial # 25004515 and one loaded Ruger 9mm serial # 31131044 in a vehicle and concealed on his person while not at his place of business, abode, or on his land." Maras signed Marozas's name to the complaint because it was expected that Marozas would be appearing in court. Marozas has testified, and Haywood does not contradict, that he gave Maras permission to sign his name to the complaint. Maras also attested to Marozas's signature by signing Officer Cedric Brumley's name on a *jurat* contained on the complaint form. Brumley has testified that he gave

Maras permission to sign his name. It is undisputed that all sworn Chicago police officers are eligible to administer the oath necessary to execute the *jurat*.

Prior to Maras's preparation of the complaint, Brumley had reviewed and signed the report of Haywood's arrest. The report, whose authorship is evidently disputed, stated that "[t]his is an on view arrest by [beat] 463d. Above subject was taken into custody after offender was stopped for driving the above listed vehicle with tinted windows and r/o's discovered that he was in possession of the two below listed handguns which were holstered on his waist. Offender was transported to the 004th Dist. and advised of his rights per Miranda." The arrest report form states that the signer "do[es] solemnly, sincerely, and truly declare and affirm that the facts stated herein are accurate to the best of my knowledge." The signature purports to be that of Marozas, and though Haywood has no evidence directly contradicting this, the signature (or, perhaps, initials) is unclear on the form and arguably appears to be signed in a hand other than Marozas's.

After spending several hours at the police station, Haywood was transferred to the Cook County Jail. The next day, November 8, 2000, he appeared in court for his initial determination of probable cause to detain as required by *Gerstein v. Pugh,* 420 U.S. 103 (1975). Marozas was present in court for this initial appearance, held before Cook County Circuit Court Judge John Kirby. The transcript of the hearing (insofar as it is relevant here) reflects only a finding of probable cause to detain. The parties agree that the only documents before Judge Kirby were the criminal complaint and the arrest report. Judge Kirby set bond at $20,000, requiring a $2,000 cash deposit.

While in court on November 8, Marozas signed, in his own name, an amended criminal complaint charging Haywood with a violation of 720 ILCS 5/24-1.6(a)(1) in that he had

6

"knowingly and unlawfully carried on his person, in a vehicle, a concealed, loaded .9 millimeter handgun while not at his place of business, his above, or on his land." Haywood does not deny this, though he says that Marozas's signature on the amended complaint was not notarized until November 14, 2000. There is no indication that Judge Kirby saw the amended complaint on November 8. On November 14, Haywood appeared before Cook County Circuit Court Judge Terrence McGlynn for a preliminary hearing. The state was given permission to file the amended complaint, and it presented the testimony of Marozas in an effort to show probable cause. Haywood's attorney elicited on cross examination that Haywood had a FOID card, the weapons were registered, and had stated that he was formerly a security guard and now worked at a pawn shop. Judge McGlynn made a finding of probable cause, indicating that the security guard issue was "something [the defense] will have to raise at trial." He did, however, reduce Haywood's bond to $10,000 after hearing argument about his background (requiring a $1,000 cash deposit). Haywood was not able to post bond until November 18, 2000 and thus remained in custody until that date.

The case against Haywood was dropped on March 28, 2001. Though the Court has been given no indication of the events prior to that date, it is a fair inference from the prosecutor's notes that he *nolle prossed* the case because he believed Haywood likely would be able to establish his entitlement to the security guard exemption to the AUUW statute and that the "State was unable to prove its case" against him. It is not entirely clear what the prosecutor meant by this; it is undisputed that Haywood did not have a valid tan card during the relevant period and thus was not entitled to the exemption. But the prosecutor (like the police officers) likely did not realize this at the time and thus may have underestimated the strength of his case.

7

Both Maras and Marozas testified at their depositions that it was common practice at the Chicago Police Department for one officer to sign his or her partner's name to "paperwork," including sworn criminal complaints. Marozas stated that he had given blanket permission to Maras to sign his name on complaints and police reports; both officers testified that this was common practice at the Department.

Haywood's complaint includes claims for illegal search (Count 1); violation of his Fourth Amendment rights (Count 2) and common law false imprisonment and malicious prosecution (Counts 3 and 4), as well as claims that the City is liable for any judgment against the officers based on *respondeat superior* and statutory indemnification (Counts 5 and 6). Defendants have moved for summary judgment on all of these claims.

1.  **The initial stop and search**

Defendants argue that based on the statements of the citizen informant they had reasonable suspicion that Haywood was carrying a weapon and that they were entitled to stop Haywood and search both his person and his automobile as a protective measure. Haywood acknowledges that "if such a tip [by the citizen informant] actually occurred, he has no basis for challenging defendant's actions in stopping or searching him." Pltf. Mem., p. 12. *See generally, Terry v. Ohio,* 392 U.S. 1 (1968); *Michigan v. Long,* 463 U.S. 1032, 1049 (1983). He argues, however, that the existence of the tip is genuinely disputed. The Court does not agree. Defendants' statement of undisputed facts submitted pursuant to N.D. Ill. LR 56.1(a)(3) sets forth their assertion regarding the information given to the officers by a citizen just before they stopped Haywood. Dfdt. 56.1(a)(3) Stmt. ¶¶ 8-10. Haywood's response under N.D. Ill. LR 56.1(b)(3) states that he "denies there was any anonymous tip," *see* Pltf. 56.1(b)(3) Stmt. ¶¶ 8-10, but he

does not dispute defendants' rendition of the underlying events. In his own statement of additional facts submitted pursuant to N.D. Ill. LR 56.1(b)(3), Haywood says that the tip described by the officers constitutes an "anonymous tip" as that term defined in an internal Chicago Police Department bulletin, cites defendants' response to a request to admit pursuant to Federal Rule of Civil Procedure 36 "deny[ing] that they received an 'anonymous tip,'" and uses this to argue that the existence of the tip cited by the officers is genuinely disputed. The Court agrees with defendants that Haywood is engaging in "semantic sleight of hand." Dfdt. Reply., p. 7. Defendants have never used the term "anonymous tip" (indeed, in the response to the request to admit cited by Haywood, they objected to the use of that term because Haywood had not defined it), so Haywood's denial that an "anonymous tip" existed gets him nowhere. He does not *genuinely* dispute that Maras and Marozas received from a citizen information that was sufficient to justify the stop and search.

There does appear to be a dispute of sorts regarding whether the tip was the basis, or the entire basis, actually used by the officers to justify their stop of Haywood's car. *See* Pltf. 56.1(b)(3)(B) Stmt. ¶87. Maras testified at his deposition that he would not have pulled over Haywood's car if it had not had tinted windows, though in context Maras actually appears to have said that it was the fact that the car had tinted windows and otherwise matched the tipster's description that justified the stop (which is also what Marozas testified). *See* Dfdt. Resp. to Pltf. 56.1(b)(3)(B) Stmt. ¶87. But even if the stop was based solely on the tinted window violation, it was justified under the Fourth Amendment, and the apparent match to the vehicle described by the tipster justified the search.

For these reasons, defendants are entitled to summary judgment on Count 1, the illegal

9

search claim, and the remaining claims insofar as they are based on the initial stop of Haywood.

**2.    The arrest**

Defendants offer a number of possible bases to justify Haywood's arrest. The officers' general offense case report indicates that Haywood was arrested for carrying an unregistered gun and also references a charge of aggravated UUW. The arrest report likewise cites the aggravated UUW statute and also references a violation of a Chicago city ordinance prohibiting tinted automobile windows. *See* Chi. Mun. Code 9-76-220. We address each of these in turn.

It is unclear whether the officers had probable cause to arrest Haywood for carrying an unregistered firearm. Haywood does not dispute that when the officers encountered him, he was unable to produce documentation demonstrating that his firearms were registered. Defendants contend that registration was in fact required by Chicago ordinance. *See* Chi. Mun. Code §§ 8-20-040 (firearms must be registered); 8-20-150 (person with firearm must carry and exhibit upon request valid registration certificate); 8-20-250 (violation is punishable by fine and incarceration). But in 1999, the Illinois Appellate Court invalidated the ordinance insofar as it applied to private detectives and security guards, on the grounds of preemption by the state statutory scheme regulating those occupations. *City of Chicago v. Haworth*, 303 Ill. App. 3d 451, 708 N.E.2d 425 (1999). Following the *Haworth* decision, the Chicago Police Department advised its personnel that its policy was to no longer require licensed detectives and security guards to register their firearms (this was the memorandum that Haywood displayed to the officers). The parties have not done a particularly good job of explaining exactly what is and is not required after *Haworth*, and under the circumstances the Court cannot say that defendants are entitled to summary judgment with regard to the arrest on this particular basis.

10

It is genuinely disputed whether the tinted window violation had anything to do with Haywood's arrest. That is not necessarily fatal to defendants' summary judgment motion. An arrest is justified if the officers had probable cause to arrest the suspect either for the offense they cited at the time, *or* for a closely-related offense. To rely on a closely-related charge, the officers must show that the charge reasonably could be based on the same set of facts that gave rise to the arrest and that the charge is one that would have recommended itself to a reasonable officer acting in good faith. *Williams v. Jaglowski,* 269 F.3d 778, 783 (7th Cir. 2001), citing *Richardson v. Bonds,* 860 F.2d 1427, 1431 (7th Cir. 1988). Defendants have not met that standard with respect to the tinted window charge, as it is based on a completely different set of facts than the alleged gun registration and aggravated UUW offenses.

This is not the end of the story, however, for defendants have a third iron in the fire. They seek to justify the arrest on the charge that was ultimately made against Haywood after the officers learned through inquiry that his guns were registered after all: the aggravated UUW charge. It is unclear if this is why the officers arrested Haywood on the street; the evidence suggests that Haywood's lack of evidence that the guns were registered was what the officers believed justified the arrest. But even if that were the case, the aggravated UUW charge satisfies the *Williams v. Jaglowski* standard for "closely-related" charges, as it was based on the same facts that appear to have been used to justify the arrest initially – possession of the firearms – and the UUW charge unquestionably was one that would have recommended itself to any officer acting in good faith investigating whether a person carrying a firearm had committed an offense.

There is no question that the officers had information sufficient to establish probable cause to believe that the elements of an aggravated UUW charge were met: Haywood was

carrying loaded guns in a vehicle, not on his own property. Haywood maintains, however, that he made the officers aware of his entitlement to the "security guard" exception and that this defeated probable cause. The Court has indicated in an earlier ruling in this case that "an officer who is aware of information that tends to establish an affirmative defense cannot ignore it, meaning that such information may negate probable cause." *Haywood v. City of Chicago*, No. 01 C 3872, 2002 WL 31545883, at *1 (N.D. Ill. Nov. 15, 2002), citing *Haywood v. City of Chicago*, No. 01 C 3872, 2002 WL 31118325, at *7 (N.D. Ill. Sept. 25, 2002). Defendants maintain that because it is undisputed that Haywood lacked a valid "tan card," he was not entitled to the benefit of the exception and that probable cause therefore was not defeated. Haywood argues that defendants were unaware that he did not have a tan card and did not realize that possession of a tan card was necessary to establish the security guard exception and thus that they cannot rely on the absence of that card to establish probable cause. The assessment of whether probable cause exists ordinarily is based on the facts known to the officer at the time of the arrest. *Beck v. Ohio*, 379 U.S. 89, 90-91 (1964); *Marshall v. Teske*, 284 F.3d 765, 770 (7th Cir. 2002). But in this case we need not delve into the significance of the officers' ignorance of the tan card problem, for Haywood's entitlement to the security guard exception was undercut for another reason clearly known to the officers at the time of his arrest: he was outside the one-hour safe harbor for travel that the statute gives to security guards. Haywood concedes that he left the house at 7:39 a.m. and was stopped within a minute or two; if his testimony is believed he was not required to be at work until 8:45 a.m. Even if he was only a couple of minutes outside the safe harbor, this was enough to defeat his entitlement to the exception; the Illinois legislature elected not to give security guards a "reasonable" amount of time to drive to work, instead setting

a specific period which Haywood plainly did not meet. In sum, completely aside from the issue of the tan card, the officers had probable cause to arrest Haywood based on his carrying of loaded weapons outside (if only by a few minutes) the safe harbor provided for security guards under Illinois law.

For these reasons, defendants are entitled to summary judgment on Haywood's claims insofar as they are based on his arrest.

### C. The charge

The same analysis described above establishes that the officers had probable cause to charge Haywood for violation of the aggravated UUW statute even if they were not aware that he lacked a tan card. The facts set forth in the criminal complaint were indisputably true; Haywood was carrying two firearms on his person while in a vehicle and not at his place of business or abode or on his land. As noted earlier, Illinois law specifically provides that a charge under the aggravated UUW statute need not negate possible exceptions, so the absence of information about Haywood's alleged non-entitlement to the security guard exception was immaterial. And indeed the information about Haywood's employment arguably got a bit worse for him after the officers contacted Big Pawn from the police station: it is undisputed that they were told that Haywood's starting time was 9:00, not 8:45, as he claims to have reported to the officers at the time of his arrest. This made his non-entitlement to the exception even clearer.

For these reasons, defendants are entitled to summary judgment on Haywood's claims to the extent they are based on his detention following arrest and prior to his *Gerstein* hearing.

### D. The alleged false swearing

Our earlier rulings in this case discuss what appears to be the undisputed fact that Maras

13

signed Marozas's name on the sworn criminal complaint that charged Haywood with aggravated UUW. Haywood argues that Maras's personation of Marozas constitutes a materially false statement that vitiates the existence of probable cause. He also argues that a person arrested without a warrant cannot be held absent a *sworn* complaint or affidavit supporting the detention and that effectively no sworn complaint or affidavit exists in this case.

The Court need not determine in this case whether the Constitution requires that detention following a *Gerstein* hearing be based on sworn evidence. The fact of the matter is that sworn evidence was presented to Judge Kirby when he determined that probable cause to detain existed. It may have been falsely sworn evidence – as explained in our earlier rulings, the statement that Marozas had subscribed to the complaint was false, as was the statement that Brumley was attesting to Marozas's signature – but false testimony is still testimony. By way of example, if Marozas had appeared at the *Gerstein* hearing, sworn on oath, and falsely testified that Haywood was carrying a machine gun, there would have been no violation of Haywood's alleged right to be held based only on sworn evidence. The same is true here.

Haywood's right not to be detained based on false evidence is protected by *Franks v. Delaware*, 438 U.S. 154 (1978), and thus we continue on to evaluate his *Franks* claim. Marozas and Maras state without contradiction that Marozas had authorized Maras to sign his name. Though that mitigates the seriousness of their wrongdoing, it does not excuse it. Maras impersonated both Marozas and Brumley, and Judge Kirby had no way of knowing that was so. And perhaps more importantly, Maras effectively did this while under oath. Our entire legal system is premised on the seriousness with which oaths are taken. When they are treated simply as words on paper, as they appear to have been in this case, confidence in the system's accuracy

is placed at risk.

That said, the Court does not believe that a reasonable jury could find that the falsehoods were material, as required to make out a *Franks* claim, *see id.* at 155-56, in the particular circumstances present in this case. As noted earlier, it is undisputed that Marozas had authorized Maras to sign his name. Both of the officers had observed the matters described in the criminal complaint. And finally, Marozas was physically presented in the courtroom at Haywood's *Gerstein* hearing and at that time signed, in his own name, the complaint that (six days later) was filed and then served as the basis for Haywood's preliminary hearing. Under these circumstances, Maras's false personation of Marozas was not material as required to sustain a claim under *Franks*.

For these reasons, defendants are entitled to summary judgment on Haywood's claims to the extent they are based on his detention following the *Gerstein* hearing. The Court does not understand Haywood to challenge his detention following the preliminary hearing that was conducted six days after the *Gerstein* hearing based on the complaint indisputably signed by Marozas in his own name; there is no claim that any false testimony was presented at that hearing.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment. The Clerk is directed to enter judgment in favor of the defendants.

MATTHEW F. KENNELLY
United States District Judge

Date: July 18, 2003